## MEMORANDUM IN SUPPORT

### I.     FACTUAL AND PROCEDURAL BACKGROUND

#### A.     The Action

On March 9, 2020, Plaintiff filed this Action, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act ("OMFWSA") by failing to pay Plaintiff and other similarly situated employees all of their overtime pay.[1] Specifically, Plaintiff alleged that, pursuant to a companywide policy, Defendant did not pay its Certified Occupational Therapy Assistants and Physical Therapy Assistants at a rate of one-and-one-half times their regular rates of pay for all hours worked in excess of 40 hours per week.[2] Plaintiff's complaint sought certification of a class under Section 216(b) of the FLSA for Defendant's alleged FLSA violation, and Fed. R. Civ. P. 23 for Defendant's alleged violation of Ohio law.[3] On April 21, 2020, Defendant filed its Answer to Plaintiff's Complaint, in which Defendant denied Plaintiff's material allegations, and that it violated any federal or state law.[4]

#### B.     Mediation and Negotiation of The Settlement

After informal discussions about settlement between counsel for the parties, the parties agreed to participate in private mediation with Michael Ungar, a well-respected attorney and mediator from the law firm of Ulmer & Berne, LLP.[5]  In advance of mediation, Defendant provided Plaintiff with time records and payroll data for Class Members so that Plaintiff and Defendant could each evaluate their respective positions and formulate settlement proposals

---

[1] ECF No. 1.
[2] *Id.*
[3] *Id.*
[4] ECF No. 8.
[5] Declaration of Jeffrey Moyle at ¶ 8, attached as Exhibit 3 ("Moyle Decl.").

based on the data.[6]  The Parties engaged in mediation on June 18, 2020 with Mediator Ungar, but were unable to resolve the case at mediation. However, Mediator Ungar subsequently made a "mediator's proposal" to settle this case, and on June 26, 2020, both parties agreed to accept the mediator's proposal.[7]

### C.  The Settlement Terms

The Settlement Agreement resolves the individual and collective claims made pursuant to the FLSA, and provides classwide relief and distribution of funds pursuant to Rule 23.[8] The terms of the Settlement Agreement include: the total settlement payment to be made by Defendant ($309,500.00), the effective date of the Settlement, the administration of notice and class payments, the process for distributing notice of the Class Action settlement to the Class Members, the process by which the Class Members can opt-out of or object to the Class Action Settlement, the process for distributing settlement payments to Class Members who do not opt-out of the Class Action settlement, the proposed service award to Plaintiff in recognition of her services in this Action, and the proposed distribution of reasonable attorneys' fees and expense reimbursements to Plaintiff's Counsel.[9]

Pursuant to the terms of the Settlement Agreement, the net settlement amount (after fees, costs, and Plaintiff's service award are deducted from the gross settlement) will be distributed amongst the Class Members who do not opt out of the Class Action settlement.[10] The Class Members who do not opt-out of the Class Action settlement will release all any and all claims under the FLSA and any and all applicable state  overtime laws, regulations, and ordinances up to

---

[6] Moyle Decl at ¶ 9.
[7] *Id.* at ¶ 10.
[8] *Id.* at ¶ 11.
[9] *See* Exhibit 1.
[10] *See* Exhibit 1.

11976381.1

the Effective Date of the Settlement Agreement, which is thirty-one days (31) days after the Court's Final Order and Judgment Entry approving the Settlement.[11]

## II.   THE COURT SHOULD APPROVE THE FLSA CLASS MEMBERS' SETTLEMENT

Settlement of claims made pursuant to § 216(b) of the FLSA are subject to approval by the Court. As shown in the attached Declaration of Jeffrey Moyle, and as explained below, Court approval is warranted.

### A.   The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

---

[11] *Id.*

*UAW v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *Crawford*, 2008 WL 4724499 at *3. Application of those factors to this settlement demonstrates that approval is warranted.

### 1.    No Indicia of Fraud or Collusion Exists

Plaintiff's Counsel and Defendant's counsel have extensive experience litigating FLSA claims, including claims for unpaid overtime, and were each given the opportunity to assess the merits the parties' claims and defenses, as well as the potential damages at issue in this case. The Settlement Agreement was achieved only after arms-length and good faith negotiations between the Parties with the assistance of Mediator Michael Ungar, and only after Mediator Ungar made a mediator's proposal that was accepted by each side.[12] As such, there is no indicia of fraud or collusion.

### 2.    The Complexity, Expense and Likely Duration<br>of Continued Litigation Favor Approval

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties disagree about the merits of Plaintiff's claims. Plaintiff claims Defendant failed to pay her and others similarly situated for all of time worked, and that such failures resulted in unpaid overtime compensation. Defendant denies any violation of federal or state law, and has consistently maintained this position throughout the duration of this case. Had this matter not settled, ongoing disputes would remain regarding

---

[12] Moyle Decl. at ¶ 10.

liability, damages, certification of a class, and whether the two or three-year statute of limitations applied.[13]

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling, which could result in no recovery for the class at all. The Settlement, on the other hand, provides substantial relief to Plaintiff and the Class Members promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.[14] Moreover, the Settlement confers substantial benefits upon Plaintiff and the Class. Its terms represent a successful resolution of the claims given that a trier of fact might conclude that the class is not entitled to any relief or to relief in an amount less than the amount agreed to in the Settlement, or that a court might not allow the claims to proceed collectively.[15] It also provides immediate and substantial relief without the attendant risks and delay of continued litigation and appeals.[16]

### 3.     Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. Specifically, Defendant provided Plaintiff with weekly pay and hours worked data for Plaintiff and the entire putative class for the last three years, allowing Plaintiff's counsel to evaluate the potential damages that might be recovered on behalf of the class if this case were litigated to a verdict. Further, the Parties extensively debated the facts and law prior to and during mediation, which process allowed both sides to more fully appreciate the issues likely to arise at trial.[17]

---

[13] Moyle Decl. at ¶ 13.
[14] *Id.* at ¶ 14.
[15] *Id.* at ¶ 15.
[16] *Id.* at ¶ 16.
[17] *Id.* at ¶ 17.

11976381.1

### 4. The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Consequently, continued litigation would be risky for all parties.

### 5. Uncertainty of Recovery Supports Approval

Plaintiff's range of possible recovery is also open to dispute. Even if Plaintiff succeeded on the merits of her claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. As an example, the Parties disagree about whether Plaintiff and the Class are entitled to overtime compensation for the work in question, and whether a three-year statute of limitations and liquidated damages would be applicable in this case.

### 6. Experienced Counsels' Views Favor Approval

Plaintiff's counsel has extensive experience in wage-and-hour collective and class actions, the Parties have acted in good faith, and have represented their clients' best interests in reaching the Settlement. Plaintiffs' Counsel and Defendant's Counsel support the Settlement as fair and reasonable, and in the best interest of the putative class as a whole, as described in the attached Declaration of Jeffrey Moyle.[18]

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v.*

---

[18] Moyle Decl at ¶ ¶ 12-17.

11976381.1

*Fibreboard Corp.,* 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for the Plaintiff and the Class.

        **1.**        **The Payments To Class Members Are Reasonable and Adequate**

All individual payments made to Class Members will be calculated proportionally based on the number of workweeks each Settlement Class member worked during the period of January 1, 2017 to December 31, 2019. As such, each Class Member has the opportunity to obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant within the period of time covered by the settlement.

        **2.**        **Plaintiff's Service Award Is Proper and Reasonable**

Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *7 (N.D. Ohio Mar. 8, 2010)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997); *see also, Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D.

240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Here, not only was Plaintiff willing to shoulder the burden of being a named plaintiff in a class and collective action lawsuit, she also contributed significant time, effort, and detailed factual information, enabling Plaintiff's counsel to evaluate the strength of her case. Plaintiff was also available and provided valuable guidance as the parties were negotiating settlement, and provided Plaintiff's counsel with the information they needed to evaluate whether the proposed settlement was in the best interest of the Class.[19] As such, her time and efforts support the requested service payment. Notably, Defendant does not object to the requested Service Award.

### 3.  The Attorneys Fees to Plaintiffs' Counsel Are Proper and Reasonable

After the Court has confirmed that the terms of settlement are fair to the Representative Plaintiff and the Class Members, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's Counsel. The Settlement reflects Defendant's agreement to pay Plaintiff's Counsel one-third of the total gross settlement amount.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate,*

---

[19] Moyle Decl. at ¶ 18.

*Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

Here, Plaintiff is requesting that the Court approve as reasonable attorneys' fees of $103,066.67, representing one-third of the settlement fund. In the Southern District of Ohio, "an award of one-third of the settlement fund as a fee award… is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *13 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221 (N.D. Ohio July 27, 2018)).  This is consistent with numerous other wage and hour cases in which courts have approved an award of attorneys' fees of one-third of the settlement amount. *See, e.g., Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, *15 (S.D. Ohio Dec. 3, 2019) (approving an award of 33 1/3% of a settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 U.S. Dist. LEXIS 181325, *12 (S.D. Ohio Oct. 21, 2019) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, *16 (N.D. Ohio Mar. 26, 2019) (same); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, *21 (S.D. Ohio Aug. 17, 2018) (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, *6 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, *22 (N.D. Ohio June 15, 2010) (same).

Further, Plaintiff's counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses.[20] (Moyle Decl. ¶ 22). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee

---

[20] Moyle Decl. at ¶ 19.

award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019).

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *10 (S.D. Ohio Nov. 25, 2019). This case involved contested issues of whether Defendant's employees performed work for which they were not properly compensated and, if so, how much of that time was compensable. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 4. The Court Should Authorize Reimbursement to Plaintiffs' Counsel Of Their Out-of-Pocket Expenses Incurred In This Case

Plaintiff's counsel should also be awarded expenses and costs in the amount of $424.90. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." Brandenburg, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." Id.

In the prosecution of this case, Plaintiff's counsel incurred or will incur out-of-pocket costs and expenses totaling $424.90, which includes $409.40 for the filing fee and service costs,

10

and $15.50 in postage costs.[21] (Moyle Decl. ¶ 14). Because these costs and expenses are reasonable and were incurred in the prosecution of Plaintiff's claims, the Court should award Plaintiff's counsel reimbursement of these costs and expenses from the settlement fund.

## III.   THE COURT SHOULD PRELIMINARILY APPROVE THE RULE 23 CLASS MEMBERS' SETTLEMENT

The proposed Class Action Settlement is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

### A.   Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted

#### 1.   Certification of the Settlement Class Is Appropriate

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). The proposed Class satisfies those requirements.

The proposed class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Class, consisting of 1,158 members, is "so numerous that joinder of all members is impracticable." There is a common issue of law and fact presented by the Class Members' claim under the OMFWSA, *w*hether Defendant failed to pay Plaintiff and the Class Members for all hours worked in excess of 40 per workweek.  Plaintiff is an adequate representative of the Class, in that she has common interests with other class members and she has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

---

[21] Moyle Decl. at ¶ 20.

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626. The unpaid overtime issues presented predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating hundreds of individual lawsuits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

### 2.     The Class Notices Satisfy Rule 23 and Due Process

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir.

12

2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed notice to the Class Members satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the notice will be sent to the Class Members by first-class mail using the addresses shown in Defendant's records. Furthermore, the Settlement Agreement provides that any notice returned as undeliverable may be traced up to two times to obtain a new address and be re-mailed by First Class Mail to the updated address. Accordingly, the Class Notice satisfies Rule 23 and due process requirements.

### B.  Approval of the Settlement Under Rule 23(e) Is Warranted

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). The Sixth Circuit has recognized that "the law generally

13

11976381.1

favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Such actions, by their nature, involve uncertainties of outcome, difficulties of proof, and lengthy litigation, and lend themselves readily to compromise. 4 Newberg On Class Actions § 11.41 (4th ed. 2007) (citing cases). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

### 1.     The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses seven factors to evaluate class action settlements:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As discussed in detail above, the seven-factor standard supports approval of the Settlement.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## IV.     CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court enter the Proposed Order, attached to hereto as **Exhibit 4**:

14

11976381.1

1. Approving the Parties' settlement of the collective claims brought by the Class Members pursuant to FLSA;

2. Preliminarily approving the Parties' settlement of the class action claims brought by the Class Members pursuant to Fed. R. Civ. P. 23(e), and approving the distribution to Class Members of the Notice of Proposed Settlement of Class Action and Fairness Hearing;

3. Designating Hans A. Nilges, Jeffrey J. Moyle, and Shannon M. Draher of Nilges Draher LLC as Class Counsel, and preliminarily approving their request for attorneys' fees and costs; and

4. Preliminarily approving the service payment for Plaintiff Elizabeth Borders.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeffrey J. Moyle* | */s/ Kara D. Williams (with permission)* |
| Jeffrey J. Moyle (0084854) | Kara D. Williams (0084245) |
| NILGES DRAHER LLC | Steven E. Seasly (0070536) |
| 614 West Superior Ave., Ste. 1148 | HAHN LOESER + PARKS LLP |
| Cleveland, OH 44113 | 200 Public Square, Suite 2800 |
| Phone: (216) 230-2955 | Cleveland, Ohio 44114-2316 |
| Email: jmoyle@ohlaborlaw.com | Phone: 216.621.0150 |
| | Email: kwilliams@hahnlaw.com |
| Hans A. Nilges (0076017) | Email: sseasly@hahnlaw.com |
| Shannon M. Draher (0074304) | |
| 7266 Portage Street, N.W., Suite D | *Counsel for Defendant* |
| Massillon, OH 44646 | |
| Phone: (330) 470-4428 | |
| Email: hans@ohlaborlaw.com | |
| Email: sdraher@ohlaborlaw.com | |

*Counsel for Plaintiff*

11976381.1